**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Amal Daniel, | ) | No. CV-10-0179-PHX-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| DFS Services, LLC, | ) | |
| Defendant. | ) | |

Pending before this Court are: (1) a Motion for Summary Judgment (Doc. 28), filed by Defendant DFS Services, LLC ("DFS"); (2) a Motion for Jury Trial filed by Amal Daniel ("Daniel") (Doc. 34); and (3) a Motion to Quash/Dismiss Summary Judgment by Daniel (Doc. 39). For the following reasons, we grant Defendant's Motion for Summary Judgment, and deny as moot Plaintiff's Motion for Jury Trial and Motion to Quash/Dismiss Summary Judgment.

**BACKGROUND**

Plaintiff filed a Complaint alleging discrimination based on her race and national origin and a hostile work environment in violation of Title VII of the Civil Rights Act. (Doc. 1).[1] Plaintiff began working for DFS as a Loss Prevention Account Manager in January 2003.

---

[1] Local Rule of Civil Procedure 56.1(b) requires a "party opposing a motion for summary judgment [to] file a statement, separate from that party's memorandum of law,

(Doc. 29, Ex. 3). Among Plaintiff's duties were to request payment arrangements on delinquent or over-limit accounts; resolve the disposition of delinquent or high risk accounts; locate customers; maintain accurate records; and provide excellent customer service, while maintaining required productivity. (Doc. 29, Ex. 4).

The record shows that throughout her time at DFS, Plaintiff received a number of warnings, most of which stem for her violation of various DFS policies. Plaintiff appears to have violated the company cell phone policy (2003), exceeded her allotted break time (2005-2006), taken credit for payments set up by other account managers (2005), and failed to get approval for schedule changes (2007). (Doc. 29, Ex. 5). During the last eighteen months on the job, Plaintiff received a verbal warning for stat manipulation (August 2007); violating company dress code (April 2008); creating a disruptive work environment (May 2008); and violating other company policies, such as leaving a double message or failing to follow instructions on messaging (June & October 2008), failing to read the CTC disclosure (June 2008), and using her cell phone while "sitting in wrap" (May & December 2008). (Doc. 29, Ex. 5, 6, 10, 11). An evaluation from October 2008 showed that Plaintiff was completing her work in a satisfactory manner, however, she had significant behavioral issues, resulting in a recommendation that she improve her understanding of company policy. (Doc. 29, Ex. 9).

---

setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact." "Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support." Under that rule, the moving party's separate statement of facts must be "*deemed admitted . . . if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts*." Plaintiff has failed to provide a controverting statement of facts that either disputes Defendant's statement of facts or references specific admissible portions of the record that establish a genuine issue of material fact. Accordingly, the Court must treat Defendant's statement of facts as admitted for purposes of this motion.

1    Approximately a week before she was terminated, Plaintiff met with her Team
2  Leader, Michelle Bishop, regarding several complaints from other colleagues that Plaintiff
3  was not handling certain situations, including calls from customers, as instructed by the
4  company. (Doc. 29, Ex. 13). A few days later, while attending a training class, Daniel
5  apparently exhibited "highly disruptive and unprofessional behavior." (Doc. 29, Ex. 15, 16).
6  According to her colleagues, and to some extent by her own admission, Plaintiff repeatedly
7  interrupted the instructor and stated that because of the new incentive plan, a number of
8  employees would quit. (Doc. 29, Ex. 13, 23). Following this incident, on January 29, 2009,
9  Daniel was terminated for her "inappropriate conduct and policy violations which reflect[ed]
10  an overall disregard for complying with Company policies, standards, and expectations."
11  (Doc. 29, Ex. 17, 21).

12    Several months after Plaintiff was terminated, she filed two Charges of
13  Discrimination, both alleging the same facts, with the Arizona Attorney General's Office,
14  Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC"). (Doc.
15  1, Ex. 1; Doc. 29, Ex. 24). She averred that on or about December 5, 2008, a co-worker
16  seated next to her asked her several questions about her national origin, mother tongue and
17  other political questions. (Doc. 1, Ex. 1). Following that conversation with her co-worker,
18  she alleged that her supervisor, Ms. Bishop, began "picking on" her and treating her
19  differently. Although other workers were encouraged to ask questions, the supervisor did not
20  permit her to ask questions and responded to her in a hostile manner. She asserted that this
21  change in their relationship and her subsequent termination several weeks later was due to
22  her race and national origin.

23                                    **DISCUSSION**
24  **I. Legal Standard**

25    Summary judgment is appropriate if the evidence, viewed in the light most
26  favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any
27  material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.
28  56(c)(2). Substantive law determines which facts are material and "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

## II.   Analysis

### a.   Discrimination

Plaintiff claims she was terminated illegally because of her race and national origin and seeks to recover damages pursuant to Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination on account of these factors.  42 U.S.C. § 2000e-2(a). To establish a prima facie case of discrimination, Plaintiff must  show that she (1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006). The proof required to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Nevertheless, Plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas* . . . or with direct or circumstantial evidence of discriminatory intent." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2004) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

If Plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to" DFS to offer a legitimate non-discriminatory reason for the

1    employment action. *Chuang v. Univ. of Cal.-Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th

2    Cir. 2000). If Defendant is able to articulate a non-discriminatory reason, the burden shifts

3    back to Plaintiff, who must be "afforded a fair opportunity to show that [the] stated reason

4    for [the challenged action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. The

5    Ninth Circuit has refused to find a "genuine issue" where the only evidence presented is

6    "uncorroborated and self-serving" testimony. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477,

7    1481 (9th Cir. 1996).

8        DFS moves for summary judgment on the ground that Plaintiff is unable to show that

9    she was qualified for her position or that she was treated differently because of her race or

10   national origin. (Doc. 28). Defendant asserts that, although Plaintiff may have been capable

11   of performing her job duties, her frequent violation of company policy and unprofessional

12   conduct made her unqualified for her position. DFS states that despite her 5 years of

13   experience, Plaintiff was simply unable to perform at the level expected of someone with that

14   much experience.

15       Plaintiff, who bears the burden of establishing a prima facie case for discrimination

16   on the basis of race or national origin, has failed to provide even a single example of a

17   similarly situated employee who received more favorable treatment. Plaintiff is required to

18   present evidence that would allow a reasonable jury to conclude that she was treated more

19   harshly than other employees with similar jobs who displayed similar conduct. *See Nicholson*

20   *v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009); *see also Hawn v. Exec. Jet*

21   *Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) ("The employees' roles need not be

22   identical; they must only be similar 'in all material respects.'" (quoting *Moran*, 447 F.3d at

23   755)). Because she has not done so, she has failed to meet her burden under the *McDonnell*

24   *Douglass* framework.

25       With regard to element two, Plaintiff has not alerted the Court in a controverting

26   statement of facts to any admissible evidence that raises a genuine issue of material fact. *See*

27   *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) ("It is well settled

28   that only admissible evidence may be considered by the trial court in ruling on a motion for

summary judgment." (citing FED. R. CIV. P. 56(e))); *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418–19 (9th Cir. 1988) (stating that conclusory allegations of discrimination are insufficient to avoid summary judgment). However, because Plaintiff has failed to establish a genuine issue of material fact as to element four, the Court need not decide whether Plaintiff's failure to comply with company policies establishes that she was not qualified for her position.

A plaintiff may also establish discriminatory intent through direct or circumstantial evidence. *Vasquez*, 349 F.3d at 640; *see also Hawn*, 615 F.3d at 1156 (stating that a plaintiff may establish a prima facie case by presenting evidence that shows "'an inference of discrimination in whatever manner is appropriate in the particular circumstances'" (quoting *Diaz v. Am. Tel & Tel.*, 752 F.2d 1356, 1361 (9th Cir. 1985)). Here, there is no evidence, direct or circumstantial, of discriminatory intent. The only information before the Court that refers to Plaintiff's race or national origin is the allegation Plaintiff presented to the EEOC, regarding her coworker Anthony Jelinao. That incident is not specifically addressed in Plaintiff's Complaint or Response, and it is therefore unclear how the conversation between Plaintiff and her co-worker would have had any effect on her supervisors' treatment of her. These facts are similar to those considered by the Ninth Circuit in *Vasquez*. There, plaintiff offered evidence of discriminatory remarks made by a co-worker. 349 F.3d at 640. The Ninth Circuit held that the remarks did not constitute direct evidence of discriminatory intent because plaintiff failed to show any nexus between the remarks of her co-worker and the facility director's subsequent employment decisions. *Id.* Moreover, the court noted that to the extent that the co-worker's remarks may be treated as circumstantial evidence of discriminatory intent, such evidence was insufficient to establish a prima facie case. *Id.* Thus, even if the Court accepted as true Plaintiff's account of her conversation with Mr. Jelinao, that evidence would not satisfy Plaintiff's burden of demonstrating discriminatory intent because Mr. Jelinao was not a decisionmaker.

Even if Plaintiff made out a prima facie, DFS has provided more than enough evidence to establish a nondiscriminatory reason for terminating Plaintiff's employment, and

nothing in the record raises a genuine issue that would permit a reasonable jury to conclude that DFS' reasons for terminating Plaintiff's employment were merely pretext. Plaintiff's "subjective belief that the challenged employment action was unnecessary or unwarranted" does not create a genuine issue of material fact. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006); *see also Wallis*, 26 F.3d at 890 (reiterating that "a plaintiff cannot defeat summary judgment simply by making out a prima facie case", *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991), but rather must produce "specific, substantial evidence of pretext", *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).

### b.   Hostile Work Environment

DFS asserts that Plaintiff failed to raise her hostile work environment claim in her Charge of Discrimination, and therefore, the Court may not consider that claim. (Doc. 28). Plaintiff in her Complaint mentioned, albeit briefly, a hostile work environment claim. However, in her Response, she does not specifically mention the claim at all. "The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). The EEOC charge must be construed "liberally," with the Court taking into consideration new claims that are "like or reasonably related to the allegations contained in the EEOC charge." *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989) (internal quotation marks omitted).  Interpreting Daniel's charge liberally, the facts alleged could be construed as raising a claim of a hostile work environment.

Even if the Court gives Plaintiff the benefit of the doubt with regard to the scope of her Charge of Discrimination, Plaintiff's claim still does not survive summary judgment. To establish a prima facie hostile work environment claim under Title VII, Plaintiff "must raise a triable issue of fact as to whether (1) she was 'subjected to verbal or physical conduct' because of her race [or national origin], (2) 'the conduct was unwelcome,' and (3) 'the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment.'" *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)). To

determine whether the alleged discriminatory conduct is sufficiently abusive, courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (internal quotation marks omitted).

Even considering all the examples referred to in Plaintiff's Response, Plaintiff is still unable to establish the first element of this claim. Plaintiff has failed to direct the Court to any admissible evidence that would suggest that any of Ms. Bishop's alleged comments or disciplinary decisions were because of Daniel's race or national origin. And although Plaintiff may have found her conversation with Mr. Jelinao offensive, there is no evidence that the incident "so pollute[d] the workplace that it altered the conditions of her employment." *Manatt*, 339 F.3d at 798; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) ("If a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe."). Indeed, the Supreme Court has stated that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher*, 524 U.S. at 788 (internal quotation marks omitted). Plaintiff's Response does not once mention her hostile work environment claim, let alone raise a genuine issue of material fact.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 28) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Jury Trial (Doc. 34) and Motion to Quash/Dismiss Summary Judgment (Doc. 39) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall terminate this matter.

DATED this 31st day of January, 2011.

_____
G. Murray Snow
United States District Judge